UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:05CV-00182-EHJ

DEBORAH A. BEASLEY                                                                              PLAINTIFF

VS.

JO ANNE B. BARNHART,
Commissioner of Social Security                                                         DEFENDANT

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

BACKGROUND

Before the Court is the complaint (DN 1) of Deborah A. Beasley ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 10) and the defendant (DN 13) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 5) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered December 19, 2005 (DN 5), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

The administrative record indicates that plaintiff has previously filed applications for Supplemental Security Income benefits on June 15, 1995 (Tr. 476-478) and February 5, 1999 (Tr. 487-490) as well as an application for Disability Insurance Benefits on February 5, 1999 (Tr.68-70).

This civil action arises out of applications for Disability Insurance Benefits and Supplemental Security Income payments that plaintiff filed on August 6, 2002 (Tr. 73-74, 495-498).  Plaintiff alleged that she became disabled on August 8, 2000 as a result of obesity, reading problems, pain in her lower back and legs, swelling in her legs and feet, gout, chest pain, asthma, and depression (Tr. 19, 73-74, 112-114, 495-498).  Administrative Law Judge Marsha Stroup ("ALJ") conducted a hearing on April 8, 2004 in Evansville, Indiana.  The plaintiff was present and represented by attorney Robert Francis.  Also present and testifying was Thomas Mehaffey as a vocational expert (Tr. 534).

In a decision dated July 7, 2004, the ALJ found from the medical evidence that plaintiff's obesity, asthma, depression, borderline intellectual functioning, degenerative disc disease and sleep apnea are "severe" impairments within the meaning of the regulations[1] (Tr. 24).  She determined that plaintiff's "severe" impairments considered alone or in combination are not severe enough to meet or medically equal an impairment listed in Appendix 1 (Tr. 22).

The ALJ found not fully credible plaintiff's statements regarding the severity and extent of her alleged ongoing exertional and non-exertional limitations and their impact on her ability to work (Tr. 22).  She determined that plaintiff retains the ability to perform sedentary work from an exertional standpoint but plaintiff cannot engage in repetitive bending, twisting, squatting, or kneeling, can perform no fast-paced work, is limited to work with a specific vocational preparation ("SVP") of 3; and needs to avoid fumes, odors, and temperature extremes (Tr. 22, 25).

Based on plaintiff's residual functional capacity and the testimony of the vocational

---

[1] The ALJ found that plaintiff's lower extremity edema, heart problems, and gout are non-severe impairments (Tr. 19-20).

expert, the ALJ found plaintiff cannot return to any of her past relevant work (Tr. 23).  However, based on plaintiff's residual functional capacity, age, education, past work experience and testimony by the vocational expert, the ALJ found that plaintiff can perform a significant number of jobs that exist in the national economy (Tr. 23-24).  The ALJ denied both applications because she concluded from the alleged onset date of August 8, 2000 through the date of the decision plaintiff has not been under a "disability," as defined in the Social Security Act (Tr. 24-25).  The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.  42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).  The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, ___ U.S. ___, 122 S.Ct. 1265, 1267-1268 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

    1)    Is the claimant engaged in substantial gainful activity?

> 2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" exists if a "reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993) (citing Smith v. Secretary of Health and Human Serv's., 893 F.2d 106, 108 (6th Cir. 1989))). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve

conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

First, plaintiff challenges the ALJ's finding that she does not meet Listing 12.04 (DN 10). In support of her position, plaintiff cites the diagnostic and functional opinions of the consultative psychological examiner, William U. Weiss, Ph.D., and the office notes of Dr. Silva, a board certified psychiatrist, who treated plaintiff in September and October 1998 (Tr. 220-221). Plaintiff also argues the ALJ did not follow applicable law when she discounted Dr. Weiss' Global Assessment of Function ("GAF") rating of 50 (DN 10).[2]

In response, defendant argues while plaintiff may have some of the symptoms enumerated in part "A" there is no evidence indicating plaintiff satisfies the "B" criteria for the listing (DN 13). Defendant contends the ALJ's decision to discount Dr. Weiss' GAF rating is supported by substantial evidence and comports with applicable law (DN 13).

By way of background, at the second step in the sequential evaluation process the Administrative Law Judge determines whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities by considering the degree of limitation imposed in four broad functional areas. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The four broad functional areas are (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3), 416.920a(c)(3). The degree of limitation in the first three broad functional areas is rated according

---

[2]In support of this argument plaintiff cites the following cases, Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); and Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001).

to the following five point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The degree of limitation in the fourth broad functional area is rated according to the following four point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

At the third step, a claimant has the burden of demonstrating he or she has an impairment that meets or medically equals a listing in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d); Burgess v. Secretary of Health and Human Services, 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1083 (6th Cir. 1984). To satisfy the severity requirement for some of the mental impairments listed in Appendix 1 the medical records must depict a specified degree of limitation in at least two of the four broad functional areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00C(1)-(4). At this step the four broad functional areas are referred to as the paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00C.

In relevant part the listing at issue reads as follows:

> "12.04 *Affective Disorders:* Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>     1. Depressive syndrome characterized by at least four of the following:
>         a. Anhedonia or pervasive loss of interest in almost

>     all activities; or
>  b. Appetite disturbance with change in weight; or
>  c. Sleep disturbance; or
>  d. Psychomotor agitation or retardation; or
>  e. Decreased energy; or
>  f. Feelings of guilt or worthlessness; or
>  g. Difficulty concentrating or thinking; or
>  h. Thoughts of suicide; or
>  I. Hallucinations, delusions, or paranoid thinking...
>
> B. Resulting in at least two of the following:
>  1. Marked restriction of activities of daily living; or
>  2. Marked difficulties in maintaining social functioning; or
>  3. Marked difficulties in maintaining concentration, persistence, or pace; or
>  4. Repeated episodes of decompensation, each of extended duration..."

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.

The record contains two office notes[3] prepared by Dr. Silva, a psychiatrist (Tr. 220, 221). While the two office notes do indicate plaintiff received psychotropic medication to address depressive symptoms, they do not express a medical opinion regarding the degree of functional limitation imposed by her depressive symptoms (Tr. 220-221). Further, the two office notes have limited probative value because they concern treatment plaintiff received more than a year and a half prior to the alleged onset of disability, August 8, 2000.

On February 27, 2003, Dr. Weiss conducted a consultative psychological examination

---

[3] The note dated September 28, 1998, indicates Dr. Silva saw plaintiff "over the weekend of 9-25-98 in consultation" following her admission for "weakness on the right side with a tremendous amount of stress and some depressive symptomology" (Tr. 221). The note also indicates plaintiff presented on September 28, 1998 for a followup office visit (Tr. 221). Dr. Silva prescribed the antidepressant Effexor for agitation and irritability and expected plaintiff will undergo psychotherapy (Tr. 221). In an office note dated October 12, 1998, Dr. Silva indicates plaintiff "seems to be doing a little bit better on her depressive symptoms" but increased the Effexor dosage to 150 mgs. every day (Tr. 220). While the office note indicates a plan to see plaintiff in the next three weeks there is nothing in the record indicating plaintiff continued treating with Dr. Silva (Tr. 220).

at the request of the State Disability Determination Service (Tr. 21, 447-452). Dr. Weiss conducted a clinical interview as well as administered the Wechsler Adult Intelligence Scale-3rd Edition ("WAIS-III"); the Wide Range Achievement Test-3 ("WRAT-3"); the Beck Depression Inventory-2nd Edition; and the MMPI-2 (Tr. 447-452). In relevant part Dr. Weiss expressed the following diagnostic findings:

> "1. Major depressive disorder, reoccurrent, moderate
>    A. Depressed mood most of the day, nearly every day, as indicated by subject report and observation made by others
>    B. Increase in appetite and significant weight gain
>    C. Insomnia
>    D. Psychomotor agitation
>    E. Diminished ability to think or concentrate..."

(Tr. 451). Clearly, Dr. Weiss' diagnostic opinion satisfies the "A" criteria for Listing 12.04.

> Dr. Weiss also expressed the following functional opinions:
>
> "Deborah Beasley is somewhat impaired in her capacity to understand, retain, and follow instructions by borderline intellectual functioning and a mathematics disorder. She is somewhat impaired in her capacity to sustain attention to perform simple repetitive tasks by depression. She is somewhat impaired in her capacity to relate to others, including fellow workers and a supervisor, by depression and asthma. She is impaired in her capacity to tolerate the stress and pressures associated with day-to-day work activity by a major depressive disorder, single episode, moderate, a mental disorder affecting a medical condition, that is, asthma, a mathematics disorder, and borderline intellectual functioning."

(Tr. 451). Further, he assigned a current GAF rating of 50 and indicated "serious symptoms" (Tr. 452). He also commented "Deborah Beasley shows serious impairment in social, occupational, and academic functioning" (Tr. 452). Further, Dr. Weiss opined that plaintiff's highest GAF rating during the past year was 50, and again indicated "serious symptoms" (Tr. 452). Arguably, Dr. Weiss' GAF rating appears to indicate more than a "moderate" degree of limitation in at least two

of the four broad functional areas, the paragraph B criteria for Listing 12.04.[4] However, the undersigned is not qualified to determine whether a GAF rating of 50 indicates a "marked" degree of limitation.

On March 17, 2003, a non-examining State agency psychological consultant, Dan Vandivier, Ph.D., reviewed Dr. Weiss' report and filled out two forms that express diagnostic and functional opinions (Tr. 145-147, 150-154). On the psychiatric review technique form, Dr. Vandivier indicated under "Listing 12.04 Affective Disorders," that plaintiff has a depressive syndrome characterized by (1) appetite disturbance with change in weight, (2) sleep disturbance, (3) psychomotor agitation or retardation, and (4) difficulty concentrating or thinking (Tr. 151). Clearly, Dr. Vandivier's findings indicate plaintiff satisfies the paragraph "A" criteria for Listing 12.04.

On the psychiatric review technique form, Dr. Vandivier also made findings regarding the degree of limitation in the four broad functional areas, the paragraph B criteria for Listing 12.04 (Tr. 153). Specifically, Dr. Vandivier indicated a **mild** degree of limitation on activities of daily living; a **moderate** degree of limitation in maintaining social functioning and in

---

[4] GAF rating of 61 to 70 indicates "[s]ome **mild symptoms** (e.g., depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**" *Diagnostic and Statistical Manual of Mental Disorders* at Page 34 (4th Ed. Text Revision 2000) ("DSM-IV-TR"). A GAF rating of 51 to 60 indicates "[**m]oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." Id. A GAF rating of 41 to 50 indicates "[s]**erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Id. Finally, a GAF of 31 to 40 indicates "[s]**ome impairment in reality testing or communication** (e.g., speech is at time illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats upon younger children, is defiant at home, and is failing at school)." Id.

9

maintaining concentration, persistence or pace; and no episodes of decompensation (Tr. 153). Clearly, Dr. Vandivier's findings indicate plaintiff does not satisfy the paragraph B criteria for Listing 12.04.

The ALJ discounted Dr. Weiss' GAF rating of 50 because it "is out of proportion with the claimant's reported activities, as well as with other substantive evidence contained in the record" (Tr. 21). Thus, the ALJ expressed two reasons for discounting Dr. Weiss' GAF rating. As to the first reason, Dr. Weiss' report indicates in making the GAF rating he considered the very activities that the ALJ believes are out of proportion with that GAF rating (Tr. 22, 448, 451-452). Certainly, Dr. Weiss is the more qualified to determine whether plaintiff's reported activities are consistent with a GAF rating of 50. As to the second reason, the ALJ did not specifically identify the "other substantive evidence" in the record (Tr. 21). If, for the sake of argument, the ALJ is referring to Dr. Vandivier's functional findings then the ALJ should have explained why the opinion of a non-examining State agency psychological consultant represents substantial evidence to support her decision to discount Dr. Weiss' GAF rating. 20 C.F.R. §§ 404.1527(d) and (f)(2)(ii), 416.927(d) and (f)(2)(ii); Social Security Ruling 96-6p; Social Security Ruling 86-8. Thus, the ALJ did not comply with applicable law when she discounted Dr. Weiss' GAF rating.

The ALJ's findings regarding the paragraph B criteria for Listing 12.04 appear to be based upon Dr. Vandivier's findings (Tr. 23, 153). However, the ALJ found a **mild** limitation in maintaining social functioning (Tr. 23). This is inconsistent with Dr. Vandivier's opinion that plaintiff has a **moderate** degree of limitation in maintaining social functioning (Tr. 153). It is also inconsistent with Dr. Weiss' GAF rating of 50 and his comments regarding plaintiff's functional limitations (Tr. 451-452). Notably, the ALJ indicated she relied on plaintiff's reported activities to

10

support her finding (Tr. 23). Something Drs. Vandivier and Weiss apparently considered in making their medical opinions. Thus, contra to applicable law the ALJ substituted her lay opinion for the opinions expressed by the examining and non-examining psychologists. Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000) ("An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record"); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The ALJ was not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion").

In regard to the fifth step in the sequential evaluation process, plaintiff asserts that the ALJ's failure to comply with Social Security Ruling 00-4p also results in reversible error (DN 10). Notably, defendant has not responded to this argument (DN 13 at Pages 10-12). In relevant part the administrative decision reads "[i]n accordance with Social Security Ruling 00-4p, the vocational expert stated that there are no conflicts with the information provided with the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles (SCO)" (Tr. 24). The undersigned notes, however, the vocational expert did not make such a representation on the record during the administrative hearing (Tr. 566-572). Perhaps this is due to the ALJ's failure to comply with her affirmative responsibility to ask the vocational expert about any possible conflict between the vocational expert's testimony and information provided in the above identified publications. Social Security Ruling 00-4p.

The undersigned acknowledges that plaintiff has raised other arguments in her fact and law summary (DN 10). For the foregoing reasons there exists an ample basis for reversing the final decision of the Commissioner and remanding for further proceedings. Therefore, the

11

undersigned concludes it is not necessary to address the additional arguments raised by plaintiff. Further, the undersigned recommends that the case be remanded to the Commissioner with instructions to conduct further proceedings consistent with the findings set forth herein.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that some of the Commissioner's findings in the sequential evaluation process are not supported by substantial evidence and do not comport with applicable law. Therefore, the undersigned recommends that the final judgment of the Commissioner be REVERSED and, pursuant to sentence four of 42 U.S.C. § 405(g), the case be REMANDED to the Commissioner with instructions to conduct further proceedings.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court

and a copy shall forthwith be mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, 474 U.S. 140 (1984). Counsel will please forward a copy of any objections to the undersigned Magistrate Judge at 126 United States Courthouse, 423 Frederica Street, Owensboro, Kentucky, 42301.

Copies:     Counsel